# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

COMMONWEALTH OF MASSACHUSETTS

*Plaintiffs,*

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID VENTURELLA, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; JOSEPH SHER, in his official capacity as Acting Director of the ICE Boston Field Office; U.S. DEPARTMENT OF HOMELAND SECURITY; and MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security,

*Defendants.*

No. _______________

**DECLARATION OF JENNIFER KLEIN**

Pursuant to 28 U.S.C. § 1746, I, Jennifer Klein, hereby declare as follows:

1. I am currently the Director of the Immigration Impact Unit ("IIU") of the Committee for Public Counsel Services ("CPCS"). This declaration is based upon my personal knowledge, my experience with the IIU, and information provided to me in connection with my work in the IIU. If called as a witness, I could and would testify competently to the matters set forth below.

2. The IIU provides expertise on the interplay of federal immigration and state criminal law to all court-appointed counsel in Massachusetts, which includes both CPCS-employed staff attorneys and private court-appointed attorneys who are certified and supervised by CPCS. I have been employed as an attorney in the IIU since 2010. Since 2024, I have been the Director of the IIU.

3. In my capacity as Director, I supervise staff who provide training, support, and advice on individual cases to all CPCS staff attorneys and bar advocates on the immigration consequences of criminal conduct. The IIU distributes written training and resource materials about this area of law, and I lecture frequently in Massachusetts on the intersection of criminal and immigration law.

4. As part of my responsibilities in the IIU, I, along with my colleagues, follow Immigration and Customs Enforcement ("ICE") enforcement policies, procedures and trends, especially as they relate to the criminal legal system. Because of this, we have been monitoring ICE arrests in Massachusetts courthouses since at least 2017. As part of our efforts to monitor, we receive reports and information from defense attorneys across the state about their experiences with clients being arrested by ICE in and around courthouses.

5. While the federal government's focus on the use of courthouses for ICE arrests changes with the federal administration, since January 2025, we have experienced a dramatic increase in noncitizen defendants being arrested by ICE at courthouses during the pendency of their criminal cases. Noncitizens are not only being arrested when released from state custody at court and from jails, but also when walking into court to appear for hearings. Many noncitizens are arrested by ICE at the beginning of their criminal cases. In some instances, noncitizens are arrested on their way into court prior to arraignment or immediately after they are arraigned. Others are taken into custody before or after subsequent hearings and even during their criminal trials.

6. Since November 3, 2026, the effective date of Section 12 of the PROTECT Act, the IIU has received reports from defense attorneys of numerous courthouse arrests in violation of the PROTECT Act. We are aware of ICE courthouse arrests that have taken place in

Middlesex County, Suffolk County, Essex County and Plymouth County. Upon information and belief, in the majority of these cases, defendants are being arrested inside the courthouse.

ICE arrests at courthouses lead to criminal cases remaining open indefinitely

7. These enforcement practices have significantly increased the number of criminal cases that cannot proceed due to the absence of noncitizen defendants. In the few cases in which ICE detains a noncitizen at the ICE facility in Plymouth, MA, defense counsel has some ability to request that their client is returned to state court for hearings. However, ICE often detains Massachusetts residents out of state. Once in ICE custody outside of Massachusetts, a noncitizen's ability to return to state court is thwarted and, in most cases, it is essentially impossible for defense counsel to secure their client's appearance for state court proceedings, either in person or via videoconference. In many cases where the defendant is not ultimately returned to court, judges issue default warrants and the cases are left open indefinitely as a result of the defendant's detention by federal immigration authorities and/or deportation.

8. Having an open default warrant or pending criminal charges can drastically impact a noncitizen's immigration proceedings and their ability to lawfully return to the United States if they are deported. Once in ICE custody, most noncitizens will have the opportunity to appear in immigration court and request release on bond. An open criminal case and/or default warrant will almost always bar the detainee from being granted bond and they will continue to be held in ICE detention until immigration proceedings are resolved. Therefore, the inability to obtain bond in immigration court makes it nearly impossible for the noncitizen to resolve their criminal case. Due to the ways the immigration and criminal system interact, the pending

criminal charges, and/or issued warrant, will ensure that the defendant remains in ICE detention and therefore cannot appear in state court to face those charges.

9. In addition, immigration court decisions are highly discretionary, and individuals will frequently be denied immigration relief due to pending criminal charges. The fact that there is no finding of guilt or conviction does not prevent immigration judges from denying immigration relief due to criminal allegations. Therefore, the open charges not only lead to ongoing ICE detention, but they also directly lead to deportation by foreclosing pathways to relief from deportation.

10. Once an individual is deported with an open criminal case, it is impossible for a noncitizen to ever legally return to the United States. Pending criminal charges or warrants will lead to the denial of any visa or pathway to status that may exist for a noncitizen. Noncitizens will continue to be denied entry into the United States so long as they have a pending charge or warrant.

11. For all the reasons above, state criminal cases remain indefinitely in default status. This leaves countless Massachusetts criminal cases unresolved. It denies defendants their right to due process, their right to counsel, their right to a jury trial, and to the presumption of innocence.

<u>ICE courthouse arrests require CPCS to expend significant resources</u>

12. When a criminal defendant fails to appear in court due to an ICE arrest, a default enters against the defendant and an arrest warrant usually issues. When a default enters, the standard practice is that, if defense counsel is a private, court-appointed attorney, the attorney will close out the case and cease representation of the client. This leaves the defendant with no counsel to advocate on the pending case, unless defendant is returned to state court and re-

appointed counsel. In particular, if the defendant was arrested by ICE and is being held in immigration custody, there is no attorney who can request that the defendant be transported from ICE custody to a Massachusetts criminal court for future hearing dates. Because of this, the IIU handles many requests from criminal defendants and their immigration attorneys for assistance in finding counsel to file motions to remove default, appoint counsel, and request and coordinate the defendant's transport to court.

13. On a regular basis, the IIU receives requests from defense counsel seeking assistance after an ICE arrest at a courthouse. In cases in which appointed counsel is aware that ICE arrested the client at the courthouse, they often reach out to the IIU for assistance in trying to argue against the issuance of a default. Defense counsel needs assistance locating the defendant in ICE custody and advice about how to effectively continue their representation while their client is in ICE custody. IIU attorneys provide advice about how to attempt to have defendants transported from ICE custody back to state court for hearing dates.

14. In addition, for the majority of cases in which the noncitizen is not returned to state court, CPCS has been advocating for ways to ensure defendant's rights are protected. The IIU and the Special Litigation Unit at CPCS have devoted significant time and resources to a litigation strategy arguing against the issuance of defaults and for the dismissal of cases where the defendant is not returned to state court. *See Commonwealth v. Loredo*, SJC-13875.

15. Because of ICE arrests in Massachusetts courthouses, I and other members of the IIU have been forced to devote significant time and resources to monitoring ICE activity in and around the state courthouses in order to provide guidance to defense counsel that enables them to properly advise their clients on what may happen when they appear in court and the risk of ICE arrest. In addition, the IIU now spends a great deal of time drafting practice advisories

and training defense attorneys about how to zealously advocate for their clients when ICE is present in court and arresting their clients without running afoul of federal law. Although in the past our training has focused almost exclusively on the immigration consequences of criminal convictions, for several years, a significant portion of our training time has been committed to describing ICE enforcement in courthouses and how defense counsel and defendants should respond.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct. Executed on November 20th, 2026, at Malden, Massachusetts.

Jennifer Klein
Director, Immigration Impact Unit
Committee for Public Counsel Services